# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DARYL SMITH, | ) |
| Plaintiff, | ) |
| | ) No. 13 cv 63 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| TIMOTHY WOLF, et al., | ) |
| Defendants. | ) |

### Memorandum Opinion and Order

Plaintiff, Daryl Smith, filed a nine count complaint alleging various constitutional violations by Chicago Police Sergeant Timothy Wolf, some unnamed Chicago Police Officers, and the City of Chicago stemming from the issuance of a parking ticket. Defendants move to dismiss Counts IV, V, and VI. After defendants filed their motion, Smith filed a First Amended Complaint and defendants chose to apply their prior motion to Counts IV, V, and VI, of the First Amended Complaint. For the reasons stated below, this Court grants the motion and dismisses Counts IV, V, and VI, with prejudice.

**Background**

The following facts are taken in the light most favorable to the plaintiff for purposes of this addressing this motion. On December 4, 2012, Smith parked his parents' pickup truck in the alley near his parents' garage intending to park the truck in the garage.[1] The overhead garage door was closed and needed to be opened from the inside. Smith turned the engine off and got out of the truck and proceeded to the rear gate. The rear gate was locked and Smith was waiting for his son to open the overhead garage door from the inside.

---

[1] Although plaintiff does not give the address where he was standing when the events occurred, he refers to two addresses: 6615 S. Hermitage Avenue and 6610 S. Paulina Street. Therefore, this Court will assume the events took place in or near the 6600 block of the alley between South Hermitage and South Paulina in Chicago.

While Smith was standing in the alley he observed a dark colored unmarked vehicle with municipal license plates approaching from 66th Street. The unmarked vehicle drove slowly past Smith's parents' red pickup truck. The driver of the unmarked vehicle, later identified as Police Sergeant Wolf, leaned out the driver's side window and asked "whose truck is that." Smith alleges that the driver was referring to a grey Dodge pickup that was also parked in the alley at approximately 6615 S. Hermitage Avenue. Smith did not respond to Sergeant Wolf because he was not aware of who parked the grey Dodge pickup.

Sergeant Wolf backed the unmarked car up, stopping adjacent to Smith's parents' red pickup truck and asked Smith to whom the red pickup truck belonged. Smith approached the vehicle and told the driver that the truck had a faulty starter and he was waiting for the overhead door to be opened so he could put the truck in the garage. Sergeant Wolf insisted that Smith move the truck or he would get a ticket for blocking the alley. Smith responded that the vehicle was there for repair and it would be moved when the overhead door opens. Smith then asked "was he not allowed to park in the garage?" To which, Smith alleges, Sergeant Wolf responded "no and I am going to give you a parking ticket." Sergeant Wolf then requested Smith's identification. Smith then asked Wolf for his identification. According to Smith, Sergeant Wolf then shouted that he is "a sergeant of police." Sergeant Wolf exited his vehicle and again asked Smith to produce his identification. Smith refused.

Smith then asked Sergeant Wolf "how can the red pickup be blocking the alley when you pulled past the truck and then backed up only after the grey pickup blocked you from proceeding through." Sergeant Wolf radioed for a ticket book. Smith asked Sergeant Wolf if he could put the truck in the garage, to which Sergeant Wolf responded that he could not. Sergeant Wolf positioned his vehicle to block the pickup from the garage.

Smith's son then opened the garage door and Mr. Nathan opened the rear gate. Smith explained to his son and Mr. Nathan that the officer was writing parking tickets for the trucks in the alley despite Smith's parents' truck having been parked in a position that allowed the officer to drive his vehicle past it. Smith then called 911 to request a field lieutenant. Thereafter, several unmarked cars with municipal plates entered the alley. Smith instructed his son to take pictures of the positioning of the vehicles in the alley for purposes of contesting the ticket.

After the additional police officers arrived on the scene, one of the officers went into a backyard near where the grey pickup truck was parked and asked someone if they would move the truck. The truck was driven away. The driver of the grey pickup truck was not ticketed and was not asked to produce identification.

Sergeant Wolf started writing the parking ticket. While waiting for a supervisor to arrive and for Sergeant Wolf to complete the ticket, Smith and his son entered the garage. Smith then informed the officers that no one has permission to enter the garage just as one officer began to enter.

Sergeant Wolf asked Smith step out of the garage and take the ticket. Smith responded by saying Sergeant Wolf could place the ticket on the windshield of the vehicle. After placing the ticket on the windshield, Sergeant Wolf entered the garage and grabbed Smith by the arm as the other unknown officers assisted in pushing Smith against the front of the red pickup shouting and forcibly placing Smith's hands on the front of the vehicle. Smith asked if he was under arrest or if he was free to leave. Sergeant Wolf and the unknown officers that surrounded Smith said no, that he was being detained for a criminal investigation. When Smith asked what crime he had committed no one responded. While Smith's hands were being held on the hood of the vehicle, Sergeant Wolf reached inside Smith's pocket and removed his wallet. Wolf took Smith's wallet

to one of the unmarked cars with municipal plates and returned to the truck where Smith was being detained. Wolf returned Smith's drivers' license and the officers left. Smith was not arrested and has requested a hearing on the parking ticket.

**Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) sets forth the basic pleading requirement that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 does not require the plaintiff to plead particularized facts, but the factual allegations in the complaint must be enough to raise a plausible right to relief above the speculative level. *See Arnett v. Webster*, 658 F. 742, 751-52 (7th Cir. 2011). In order to survive dismissal, plaintiff must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). When ruling on a motion to dismiss, courts accept all well-pleaded allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (7th Cir. 2004), and draw all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

**Discussion**

Smith's First Amended Complaint alleges nine counts: unlawful search, seizure and restraint in violation of the Fourth Amendment (Count I); excessive use of force and failure to intervene in violation of the Fourth Amendment (Count II); false arrest in violation of the Fourth Amendment (Count III); class-of-one discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment (Count IV); abuse of power in violation of Substantive Due Process (Count V); civil conspiracy (Count VI); false arrest and imprisonment in violation of state law (Count VII); assault and battery in violation of state law (Count VIII); and indemnity

pursuant to 745 ILCS 10/9-102 (Count IX). Defendants move to dismiss Counts IV, V, VI for failure to state a claim upon which relief can be granted. This Court will address each count in turn.

*1. Count IV: Class-of-One Discrimination*

Smith alleges that the defendant police officers violated his rights under the Equal Protection Clause of the Constitution by singling him out for ticketing when there were other vehicles parked in the alley. Defendants argue that Smith fails to allege that he and his comparators are identical in all relevant and material respects. Defendants also argue that Smith fails to allege that Wolf and the unknown officers treated Smith differently because of a totally illegitimate animus.

Generally, claims based on a violation of the Equal Protection Clause of the 14th Amendment involve a plaintiff alleging membership in a protected class, such as race or gender, who has suffered unequal treatment by the government. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440-41, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985). The Supreme Court has also recognized "class of one" claims under the Equal Protection Clause, where the plaintiff alleges intentionally different treatment from other similarly situated individuals with no rational basis for the different treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000). The Seventh Circuit also recognizes that an individual also may state a claim under the equal protection clause if he can show that state government took an action that was a spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective. *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001).

To state a "class-of-one" claim under the Equal Protection Clause, a plaintiff must allege (1) that defendants treated him differently from similarly situated individuals and (2) that there is

no rational basis for the different treatment or that he was treated differently because of the defendants' "totally illegitimate animus" toward him. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

Here, Smith's comparator appears to be the driver of the grey pickup truck. (Pl. First Amend. Compl., Dkt. 16 at ¶35). It is not enough for Smith to show that other individuals were parked in the alley and were treated differently; he must show that those individuals were similarly situated and that the defendants intentionally treated them more favorably. *Lunini v. Grayeb*, 395 F.3d 761, 770 (7th Cir. 2005). Moreover, "[i]t is clear that similarly situated individuals must be very similar indeed." *McDonald*, 371 F.3d at 1002; *see also Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (holding that in order to be considered "similarly situated," comparators must be "prima facie identical in all relevant respects"). Smith's complaint fails to allege sufficient similarity. In fact, Smith alleges one very material difference between the driver of the grey pickup truck and himself; the driver of the grey pickup truck moved his truck from the alley when asked to do so by the police officer defendants. Smith clearly alleges that when Sergeant Wolf asked him to move the red pickup truck, Smith did not comply with the request. (Pl. First Amend. Compl., Dkt. 16 at ¶17). In order to survive dismissal, Smith must identify an individual who was not ticketed despite refusing to move his vehicle upon request from a police officer.

Moreover, there is nothing in the complaint to suggest that Wolf would not have responded in precisely the same manner if another individual were in Smith's shoes. Compare the instant situation to *Geinosky v. City of Chicago*, where the plaintiff received twenty-four "bogus parking tickets" from the officers of the same unit over a fourteen-month period. 675 F.3d 743 (7th Cir. 2012). In that case, the court found that the complaint clearly told a story that

Geinosky was targeted because "[r]eason and common sense provide no answers to why he was targeted that could be considered a legitimate exercise of police discretion." *Id.* at 748. "Ill will must be the sole cause of the complained-of action. A showing of 'uneven law enforcement,' standing alone, will not suffice." *Schneider v. County of Will*, 190 F. Supp. 2d 1082, 1093 (N.D. Ill. 2002). Since Smith fails to allege that similarly situated individuals were intentionally treated differently and that Sergeant Wolf acted solely on the basis of ill will, Smith's claim for "class-of-one" discrimination is insufficiently pleaded. With this finding, this Court is not condoning the officer defendants' conduct nor expressing an opinion on the reasonableness of the officers' use of force under the Fourth Amendment.

"Selective, incomplete enforcement of the law is the norm in this country." *Hameetman v. City of Chicago,* 776 F.2d 636, 643 (7th Cir. 1985). The purpose of a "class-of-one" equal protection claim is neither "to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case." *McDonald*, 371 F.3d at 1009. Smith has alleged uneven law enforcement rather than "class-of-one" discrimination. This Court therefore dismisses Count IV.

*2. Count V: Substantive Due Process*

In Count V, Smith alleges an egregious and arbitrary abuse of power in violation of his substantive due process rights. Specifically, Smith asserts that the defendant officers illegally violated his privacy by using physical force in placing Smith on the hood of the truck and then invading his personal affects by removing his wallet from his pocket. (Pl. First Amend. Compl., Dkt. 16 at ¶17). Defendants argue that Smith lacks standing to assert this claim because the basis for the claim must be the parking ticket and the vehicle is registered to his parents and therefore

7

Smith has not suffered a personal injury in fact. Defendants also argue that Smith has not alleged conduct sufficiently egregious to implicate the due process clause. The Due Process Clause of the Fourteenth Amendment guarantees both fair process and also covers a substantive sphere, "barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986)); *see also Rochin v. California,* 342 U.S. 165, 172-73 (1952).

In any action brought pursuant to Section 1983 of the Civil Rights Act of 1964, the first step is to identify the exact contours of the right plaintiff claims defendant has violated. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court held in *Graham v. Connor* that "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham,* 490 U.S. at 395. Here, the conduct of which Smith complains – that his hands were forcibly placed on the hood of his parents' vehicle and his wallet was removed from his pocket – occurred in the course of a seizure within the meaning of the Fourth Amendment.[2] "[*A*]*ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the *Fourth Amendment* and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id; see also United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997). The Fourth Amendment covers "searches and seizures," *U.S. Const., Amdt. 4*, both of which Smith alleges took place here. In pleading his Equal Protection claim,

---

[2] In this statement, this Court is not expressing an opinion on the merits of Smith's Fourth Amendment claims, which are not challenged in the motion at issue.

Smith alleges that he was seized (forcibly placed on the hood) and searched (Sergeant Wolf extracting his wallet from his pocket). Therefore, substantive due process analysis is inappropriate because Smith's claim is "covered by" the Fourth Amendment and thus pleaded elsewhere in Smith's complaint.

*3. Count VI: Civil Conspiracy*

Smith alleges in Count VI of his First Amended Complaint that Sergeant Wolf and the other defendant police officer acted in concert pursuant to an agreement to "uphold a 'code' that resulted in Defendants' failure to intervene for the Plaintiff against a Police Supervisor." (Pl. First Amend. Compl., Dkt. 16 at ¶87). Smith further alleges, "Sometimes [sic] before the assault, battery, seizure and search, Defendants agreed to turn a blind eye to abuse of the Plaintiff at the hands of a superior officer." *Id.* Defendants move to dismiss Smith's civil conspiracy claim arguing that Smith alleges only a bare assertion of conspiracy insufficient to raise Smith's claim above speculation.

To establish § 1983 liability through a conspiracy, a plaintiff must plead and prove that (1) the defendants, under color of law, reached an agreement or understanding to deprive plaintiff of his constitutional rights; and (2) those individuals were willful participants in the joint activity in furtherance of the agreement. *Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011) (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)). In *Bell Atlantic Corp. v. Twombly,* the Supreme Court discussed pleading conspiracy, albeit in the realm of anti-trust, finding that "that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence… they must be placed in a context that raises a suggestion of a preceding agreement, not

merely parallel conduct that could just as well be independent action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-557 (2007).

Here, Smith's allegations that the unknown officer defendants acted in concert with defendant Wolf pursuant to an agreement are very bare. The only factual enhancements that Smith offers to support an agreement are that the defendant officers all shouted "you are now being 'detained'" after Sergeant Wolf's search of Smith's pockets for his wallet and identification, and that they were all of the same unit and acted together to place Smith against the hood of the truck. (Pl. First Amend. Compl., Dkt. 16 at ¶¶ 83-84, 86-87). Such allegations of parallel conduct combined with a conclusory allegation that the actions were in furtherance of an agreement at some unidentified time, are insufficient to state a claim for conspiracy. Moreover, as Smith alleges, Sergeant Wolf was the supervisor or ranking officer on the scene and therefore the situation as alleged appears to be officers following the ranking officer's lead based on chain-of-command rather than an agreement to deprive Smith of his rights. Furthermore, the allegations in Count VI echo the allegations found elsewhere in the complaint, particularly Count II, which alleges excessive force and failure to intervene in violation of the Fourth Amendment. This Court therefore dismisses Count VI.

**Conclusion**

Based on the analysis contained herein, this Court grants defendants' Motion to Dismiss Counts IV, V, and VI, [13] and dismisses those counts with prejudice.

IT IS SO ORDERED.

Date: June 20, 2013

Entered: _____
Sharon Johnson Coleman